GENERAL DYESTUFF CORP. *v.* UNITED STATES (No. 3467) [1]

[1] T. D. 45480.

United States Court of Customs and Patent Appeals, January 25, 1932

*Barnes, Richardson & Halstead (Samuel M. Richardson* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

[Oral argument December 10, 1931, by Mr. Richardson and Mr. Stein]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The issue to be determined in this suit is stated abstractly in the brief of appellant as follows:

Where imported merchandise not a patented article is sold to customers of the importer and a royalty, so called, collected from them as agent for the owners of a process patent under the terms of which the imported merchandise may ultimately be used, is the so-called royalty a part of the gross United States selling price from which the dutiable value of the merchandise is calculated?

The case is before us by appeal from a judgment of the Third Division of the Customs Court, in which that tribunal, in an opinion by Evans, Judge, Circular 2069, reappraisement 70210–A, affirmed the decision of Brown, the single judge, T. D. 44729, sitting in reappraisement, wherein the latter sustained the action of the local appraiser in holding that a certain 10 per centum of the basic price per pound collected by importer, as hereinafter will appear, became a part of the purchase price of the merchandise and as such a part of the dutiable value.

The case was submitted upon a stipulation of facts which we here quote in full:

1. That the merchandise involved in this case is fast red salt GL, dutiable under paragraph 28 of the Tariff Act of 1922.

2. That there was no similar competitive American product within the terms of said paragraph at the date of entry herein.

3. That the Chemical Foundation is the owner of United States letters patent No. 1099108 covering a process for the dyeing of cloth with the use of so-called naphthol dyes or ice colors, which patent expires June 2, 1931.

4. That the imported merchandise was at the date of exportation and still is used by the purchasers thereof from the importer in the United States, together with other ingredients, in the process of dyeing cloth with the use of so-called naphthol dyes or ice colors under the terms of said process patent.

5. That the basic price at which such or similar imported merchandise was freely offered and sold to all customers in the United States, at or about the date of exportation, in the usual wholesale quantities, in the principal market of the United States, is $0.60 per pound.

6. That at the time said merchandise was sold the plaintiff, as agent for the Chemical Foundation, billed to and collected from its customers in a separate bill in a sum amounting to 10 per centum of the basic price as a royalty for the prospective use of said merchandise under the terms of said process patent, together with 4 per centum for the duty on such royalty with an agreement that in case the duty on such royalty is refunded, it would be returned to the purchaser.

7. That said royalty so collected was paid by the plaintiff to the Chemical Foundation quarterly.

8. That there is no patent covering the production, sale, manufacture or process of manufacture of the imported merchandise.

9. That the amount of United States duty on the merchandise in question is $0.07 per pound and 40 per centum ad valorem.

10. That the profits of the plaintiff exceed 8 per centum and the overhead of the plaintiff exceeds 8 per centum of the selling price of such merchandise in the United States.

11. That the freight, insurance, etc., on such merchandise amounted to 3 cents per pound.

The merchandise is a coal-tar product dutiable under paragraph 28 of the Tariff Act of 1922, the pertinent portions of which read:

PAR. 28. Coal-tar products: All colors, dyes, or stains, * * * ; and all mixtures, including solutions, consisting in whole or in part of any of the articles or materials provided for in this paragraph, excepting mixtures of synthetic odoriferous or aromatic chemicals, 45 per centum ad valorem based upon the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States, and 7 cents per pound: *Provided*, That for a period of two years beginning on the day following the passage of this Act the ad valorem rate of duty shall be 60 per centum instead of 45 per centum. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (d) of section 402, Title IV. For the purposes of this paragraph any coal-tar product provided for in this Act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner; * * *.

By the terms of the stipulation, it is agreed that there is "no American-made product with which the imported product is competitive within the terms of said paragraph 28," and no question is raised by either party as to there being a United States value as defined by section 402 (d) of said act, which section reads as follows:

SEC. 402. * * *

(d) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

It is the contention of appellant that—

The so-called royalty does not attach to the merchandise itself and is therefore no part of its value.

The royalty and the duty thereon constitute no part of the purchase price of the merchandise.

Under Point I appellant argues that the importation of the merchandise can not be considered to infringe any rights of the patentee; that the merchandise itself is not subject to patent; that the importer does not itself use the merchandise but only sells to others, and that in order to protect itself from becoming liable as a contributory infringer for any damage which the patentee may suffer by reason of the unlawful use of the merchandise by a purchaser from it, importer arranged to collect, for and on behalf of the owner of the process patent, the percentage stated, in the manner set forth in the stipulation and to pay same to patentee.

Further, it is argued that until the use of the imported merchandise no possible claim could arise against appellant by the owner of the process patent; that, if sold to one who did not use the merchandise according to the process patent, no damages could accrue; that the royalty is not due from a purchaser until he actually uses the merchandise under the terms of the patent; that the royalty fee is based upon the ultimate use of the merchandise and can not attach until after its purchase by the ultimate consumer; and that, since any element going to make up United States value must be present at the time of the sale, the royalty element not having then attached, it can not be a part of the United States value.

These arguments under Point I, as well as those under Point II attempting to contravene certain reasoning of the tribunals below, are most interesting and ingenious, but we are not convinced of their soundness.

Whatever the fact *might have been* as to when, as a matter of legal compulsion, the purchasers must have paid the royalty for using the merchandise bought from the importer, the actual fact *is* that they did pay it, or agreed as a part of the contract, to pay it, at the same time that they paid the other purchase money. Furthermore, it is an admitted fact that the purchasers could not have bought the merchandise without so paying or agreeing to pay this added 10 per centum of the basic price.

The merchandise was not—

freely offered for sale   *   *   *   in the principal market of the United States to all purchasers   *   *   *   in the usual wholesale quantities and in the ordinary course of trade   *   *   *,

at a price which did not in every instance, so far as this record shows, include as a part thereof said ten per centum of the basic price added to such basic price.

We are unable to see wherein the fact that the 10 per centum does not go to the importer but is paid by him to another party, under a contract, affects the legal situation. It is the price at which merchandise is freely offered for sale under the conditions and limitations imposed by section 402 (d) which that section fixes as the dutiable United States value, and the manner in which the proceeds, after being paid, are distributed is not of moment in determining that value.

Neither are we able to see wherein the fact that the bills for the 10 per centum were sent separate from the other bills affects the issue. The 10 per centum obligation was as much a part of the contract between the importer and those who purchased from it as were the other elements which entered into the sale price. It was inseparable from the transactions.

The purchasers doubtless understood fully their liability to the owner of the process patent. In order to use the product, in accordance with the patent, compensation for such use had to be made. The arrangement which was made, as set forth in the stipulation, for the payment of this compensation was, we assume, convenient and satisfactory, but it resulted in making the so-called royalty an integral part of, or a fixed element in, the price at which the merchandise was freely offered for sale. Indeed, without its being included, the merchandise was not offered for sale at all.

The opinions of both tribunals below are full and seem to us so complete as to require no further elaboration of the issue by this court.

The judgment appealed from is *affirmed*.